STUART PLUNKETT (SBN 187971)
Stuart.plunkett@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, CA 94111
Telephone: 415.291.6200
Facsimile: 415.291.6300

YAN ZHANG (SBN 248531)
Yan.zhang@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road, Building One, Suite 200
Palo Alto, CA 94304
Telephone: 650.739.7500
Facsimile: 650.739.7600

CARL OBERDIER (*pro hac vice* application forthcoming)
cwo@oberdier.com
KELLEN RESSMEYER (*pro hac vice* application forthcoming)
kgr@oberdier.com
OBERDIER RESSMEYER LLP
655 Third Avenue, 28th Floor
New York, New York 10017
Telephone: 212.659.5141
Facsimile: 646.349.4925

*Attorneys for Petitioners*
CHINA FORTUNE LAND DEVELOPMENT
*and* GLOBAL INDUSTRIAL INVESTMENT LTD.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHINA FORTUNE LAND DEVELOPMENT and GLOBAL INDUSTRIAL INVESTMENT LTD.<br><br>Plaintiffs,<br><br>vs.<br><br>1955 CAPITAL FUND I GP LLC AND 1955 CAPITAL CHINA FUND GP LLC<br><br>Defendants. | Case No. 19-cv-07043<br><br>**NOTICE OF PETITION AND PETITION TO VACATE FINAL ARBITRATION AWARD**<br><br>Hon.<br>Date:<br>Time:<br>Place:<br>Courtroom: |

# REDACTED VERSION

**NOTICE OF PETITION**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Petitioners and Arbitration Respondents-Counterclaimants, China Fortune Land Development and Global Industrial Investment Limited will and hereby do petition and move this Court, pursuant to Sections 10(a)(3) and (a)(4) of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (June 10, 1958), for an order vacating the Final Award issued on June 26, 2019, and reissued as corrected on August 13, 2019, by Arbitrator Gerald Ghikas, because the arbitrator (*a*) exceeded his powers, and (*b*) is guilty of misbehavior by which the rights of Petitioners have been prejudiced. Notice of the date and time of the hearing on this matter, which will be heard at the United States District Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102-3489, will be provided as soon as the above-referenced Court assigns this matter to a judge so that Petitioners may request a hearing.

This Petition is based on this Notice of Petition, the attached Petition, the Declaration of Kellen G. Ressmeyer in support of the Petition, the complete files and records in this matter, and such oral argument as may be presented at any hearing.

Dated: October 28, 2019

Respectfully submitted,

OBERDIER RESSMEYMER LLP
Carl W. Oberdier
(*pro hac vice* application forthcoming)
Kellen G. Ressmeyer
(*pro hac vice* application forthcoming)
655 Third Avenue; 28th Floor
New York, New York 10017
Telephone: (212) 659-5141

By:
*/s/ Stuart C. Plunkett*
STUART PLUNKETT (SBN 187971)
Stuart.plunkett@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (415) 291-6200

YAN ZHANG (SBN 248531)
Yan.zhang@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500

*Attorneys for Plaintiffs*
*China Fortune Land Development and Global Industrial Investment Ltd*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. SUBJECT MATTER AND PERSONAL JURISDICTION ........ 4

III. STANDARD OF REVIEW ........ 5

IV. STATEMENT OF THE CASE ........ 7

A. The Operative Agreements ........ 7

B. [REDACTED] ........ 9

C. The Dispute Leading To Arbitration ........ 10

D. The Arbitration ........ 11

1. The Parties' And Arbitrator's Agreement That Only The Operative Agreements Were At Issue ........ 11

2. [REDACTED] ........ 12

3. The Parties' Positions Regarding the "26 November Agreements" ........ 13

4. The Parties' Agreement That The Final Award Should Terminate The Operative Agreements Immediately ........ 14

E. The Final Award ........ 15

1. Operative Agreements Invalidated [REDACTED] ........ 15

2. The Arbitrator Imposes His Own Sense Of Equity ........ 16

3. Awards of Only Nominal Damages, But $9 Million in Costs ........ 18

F. Post-Award Proceedings ........ 19

V. ARGUMENT ........ 19

A. The Final Award Should Be Vacated Because The Arbitrator Exceeded His Authority ........ 20

1. The Final Award Did Not "Draw Its Essence" From The Parties' Contracts ........ 20

2. The Final Award Was Outside the Scope of the Parties' Submissions ........ 22

B. The Final Award Should Be Vacated Because CFLD/GIIL Did Not Receive A Fair Hearing ........ 23

C. Vacatur of The Award Automatically Vacates Its Award of Costs ........ 24

VI. CONCLUSION ........ 24

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Am. Postal Workers Union v. United States Postal Serv.*, 682 F.2d 1280 (9th Cir. 1982) .....23

*Aspic Eng'g & Constr. Co. v. ECC Centcom Constr., LLC*, 268 F. Supp. 3d 1053 (N.D. Cal. 2017), *aff'd*, 913 F.3d 1162 (9th Cir. 2019) .....1, 3, 5, 6, 7, 20, 22, 23, 25

*Axia Netmedia Corp. v. KCST, USA, Inc.*, 381 F. Supp. 3d 128 (D. Mass. 2019) .....22

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208 (9th Cir. 2016) .....24

*Coast Trading Co., Inc. v. Pacific Molasses Co.*, 681 F.2d 1195 (9th Cir. 1982) .....23

*Dastime Gp. Ltd. v. Moonvale Investments Ltd.*, Case No. 17-cv-01859-JSW, 2017 WL 4712179 (N.D. Cal. Oct. 11, 2017) .....6

*Delta Lines, Inc. v. Bhd. of Teamsters & Auto Truck Drivers, Local 85*, 409 F. Supp. 873 (N.D. Cal. 1976) .....7, 23

*Dobbs, Inc. v. Local No. 614 Int'l Broth. Of Teamsters*, 813 F.2d 85 (6th Cir. 1987) .....21

*Federated Employers of Nevada, Inc. v. Teamsters Local No. 631*, 600 F.2d 1263 (9th Cir. 1979) .....21

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114 (9th Cir. 2002) .....5

*Hebbronville Lone Star Rentals, L.L.C. v. Sunbelt Rentals Indus. Servs., L.L.C.*, 898 F.3d 629 (5th Cir. 2018) .....21

*Immersion Corp. v. Sony Computer Entm't Am. LLC*, No. 16-CV-00857-RMW, 2016 WL 2914415 (N.D. Cal. May 19, 2016) .....6

*Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401 (9th Cir. 2011) .....6

*Leeds v. First Allied Connecticut Corp.*, 521 A.2d 1095 (Del. Ch. 1986) .....24

*Matter of Watkins-Johnson Co. v. Pub. Utilities Auditors*, No. C-95 20715 RMW(E.I.), 1996 WL 83883 (N.D. Cal. Feb. 20, 1996)....4, 24

*Move, Inc. v. Citigroup Glob. Mkts., Inc.*, 840 F.3d 1152 (9th Cir. 2016)....7, 24

*Recreation Ctrs. of Am., Inc. v. Sheppard*, No. CIV. A. 4041, 1974 WL 6345 (Del. Ch. Oct. 21, 1974)....24

*Sapirstein-Stone-Weiss Found v. Merkin*, 950 F. Supp. 2d 621 (S.D.N.Y. 2013)....25

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)....4, 6, 7, 20, 21

*Thomas Kinkade Co. v. Hazlewood*, No. C 06 7034 MHP, 2007 WL 2088584 (N.D. Cal. July 18, 2007)....25

*W. Employers Ins. Co. v. Jefferies & Co.*, 958 F.2d 258 (9th Cir. 1992)....23

**STATUTES**

9 U.S.C. § 1....1

9 U.S.C. § 10....1, 4, 6, 7, 20, 23, 24

9 U.S.C. § 12....5

9 U.S.C. § 202....5

9 U.S.C. § 203....5

28 U.S.C. ¶ 1332....5

CAL. CIV. PROC. CODE § 410.10....5

**OTHER AUTHORITIES**

ICDR Rules, Art. 2(3)....11, 22

ICDR Rules, Art. 3(3)....11, 22

ICDR Rules, Art. 33....19

N.Y. CONV., ART. V.1....1, 5, 6, 20, 23

Petitioners and Arbitration-Respondents China Fortune Land Development ("**CFLD**") and Global Industrial Investment Ltd. ("**GIIL**") (jointly, "**CFLD/GIIL**") submit this petition, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38 (June 10, 1958) (the "**New York Convention**" or "**N.Y. Conv.**") and Section 10(a)(3) and (a)(4) of the Federal Arbitration Act (the "**FAA**"), 9 U.S.C. § 1, *et seq*., to vacate the final award issued on June 26, 2019, and corrected on August 13, 2019 (the "**Final Award**") (Exhibit 1 to Declaration of Kellen G. Ressmeyer), by Arbitrator Gerald W. Ghikas, Q.C. (the "**Arbitrator**").

## I. INTRODUCTION

The Final Award reflects precisely the jurisdictional overreach and denial of due process by an arbitrator that the New York Convention and FAA prohibit. Both provide exceptions to the policy favoring the finality of arbitral decisions where arbitrators "exceeded their powers," 9 U.S.C. § 10(a)(4), or were "guilty of . . . misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). *See also* N.Y. Conv. Art. V.1(b), (c), (e).

Here, the Arbitrator fully resolved the issues submitted by the parties by finding their contracts invalid under governing Delaware law. Believing that result "inequitable," however, he crafted new, materially different contracts never submitted by the parties in order to uphold their validity. In so doing, the Arbitrator exceeded his powers and also deprived CFLD/GIIL of a fundamentally fair hearing by basing the Final Award on issues CFLD/GIIL never had an opportunity to address. The Ninth Circuit and this Court hold that this exact sort of arbitrator overreach warrants vacatur. *See Aspic Eng'g & Constr. Co. v. ECC Centcom Constr., LLC*, 268 F. Supp. 3d 1053, 1057 (N.D. Cal. 2017) ("*Aspic I*"), *aff'd*, 913 F.3d 1162, 1968 (9th Cir. 2019) ("*Aspic II*").

The underlying arbitration (the "**Arbitration**") was a straightforward contract dispute between the general partners (jointly, the "**GPs**") and their sole limited partner, GIIL, in venture capital ("**VC**") funds to which GIIL committed to invest up to $200 million. The GPs (Respondents/Arbitration Claimants) sought to enforce the parties' fully executed, integrated

agreements (the "**Operative Agreements**"), which they contended were valid. CFLD/GIIL contended the Operative Agreements were invalid and sought their rescission.[1]

The parties and Arbitrator all agreed that the disputes reflected in the parties' submissions, and the Arbitrator's jurisdiction itself, arose exclusively from the Operative Agreements. They also agreed on the content of the Operative Agreements, attached as exhibits to both sides' pleadings, as consisting of, for each fund: [redacted]

The Arbitrator found that the Operative Agreements were invalid. [redacted]

[1] CFLD (GIIL's corporate parent) joined in GIIL's defenses and counterclaims provisionally, subject to its objection that the Arbitrator lacked jurisdiction over it. CFLD does not concede that the Arbitrator's exercise of jurisdiction over it was proper, but does not assert such exercise of jurisdiction as a ground for vacatur.

[2] The governing arbitration rules required the parties to attach to their initial pleadings "a copy of the entire arbitration clause or agreement being invoked" and "refer[] to any contract out of or in relation to which the dispute arises." The parties attached and referred only to the Operative Agreements as the contracts from which their dispute arose. *See* Section IV(D), *infra*.

The Arbitrator then, however, proceeded beyond the scope of the submitted dispute, the Operative Agreements, and their arbitration provisions, to apply his own sense of justice. Believing it "***inequitable***" to rescind the Operative Agreements, the Arbitrator pieced together and declared valid a materially different combination , which he defined as the "**26 November Agreements**." No party ever asked the Arbitrator to decide the validity of these "26 November Agreements," even in the alternative. To the contrary, both sides assumed—as the Arbitrator acknowledged—that the "26 November Agreements" were ***not*** final or valid. Yet the Arbitrator never afforded the parties the opportunity to present evidence or argument as to whether the "26 November Agreements" were valid contracts or, if so, materially breached by the GPs.

The Arbitrator also awarded a type of relief—a declaration that the parties continue to be bound by the "26 November Agreements"—that was outside of, and contrary to, the scope of the parties' submissions. The GPs sought only monetary damages, and CFLD/GIIL sought only rescission of the Operative Agreements. Both sides agreed that an ongoing partnership between them was untenable and that the Operative Agreements should be terminated. The Arbitrator was not asked by either side to force the parties to continue in unwilling fiduciary relationships of trust in a transaction involving tens of millions of dollars,

Both by making a dispositive finding outside the scope of the parties' submissions and by rendering a decision that fails to "draw its essence" from the Operative Agreements, the Arbitrator exceeded his powers. *See Aspic I*, 268 F. Supp. 3d at 1057; *Aspic II*, 913 F.3d at 1967-68 (vacating arbitral award that "voided and reconstructed parts of the [operative contracts] based on a belief that the [contracts] did not reflect a true meeting of the minds," because "arbitrators exceed their powers when they disregard the operative contract to correct a perceived unfair resolution"). An arbitrator may not "stray[] from the interpretation and application of the [parties'] agreement and

effectively dispense[] his own brand of industrial justice." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671-72 (2010) (citations omitted).

The GPs and the Arbitrator have already effectively acknowledged that the Final Award is outside the scope of the parties' submissions and Operative Agreements. In a motion to "clarify" the Final Award, the GPs reaffirmed that they never intended to be bound by the "26 November Agreements" as written and asked the Arbitrator to decide that a particular provision [REDACTED] imposes no obligation upon them. [REDACTED] The Arbitrator denied the motion [REDACTED] Of course, the Final Award gave rise to this "new dispute" only because the parties lacked notice that the validity, interpretation, and material breach of ***any*** contractual terms other than those in the Operative Agreements were potentially at issue.

Furthermore, under settled caselaw, the Arbitrator's decision on a dispositive question not submitted by the parties—the contractual status of the "26 November Agreements"—deprived CFLD/GIIL of their due process right to a fair arbitration process. *See Matter of Watkins-Johnson Co. v. Pub. Utilities Auditors*, No. C-95 20715 RMW(E.I.), 1996 WL 83883, at *4 (N.D. Cal. Feb. 20, 1996) (vacating award under predecessor to FAA § 10(a)(3) because arbitration "ha[d] not provided an adequate opportunity for the party to present its evidence and arguments").

In sum, to dispense the Arbitrator's own brand of industrial justice, his Final Award resolved a dispositive issue the parties never presented, imposed relief both sides opposed, foisted on them materially different contractual obligations to which they never agreed, and already spawned at least one new dispute. The Court should vacate the Final Award under the New York Convention, the FAA, and controlling Supreme Court and Ninth Circuit authority.

## II. SUBJECT MATTER AND PERSONAL JURISDICTION

This Court has subject matter over this action under 9 U.S.C. § 203, which provides federal jurisdiction over actions to confirm or vacate an arbitral award that is governed by the New York Convention. *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114,

1120 (9th Cir. 2002). The New York Convention applies to arbitrations that, as here, arise out of commercial relationships involving a non-U.S. citizen. 9 U.S.C. § 202; *Aspic I*, 268 F. Supp. 3d at 1057. Alternatively, diversity jurisdiction exists because Petitioners are Chinese and Hong Kong companies (Ex. 1 ¶ 3), Respondents are Delaware limited liability companies headquartered in California (*Id.* ¶ 2; Ex. 16 ¶ 1.3), and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. ¶ 1332. Petitioners have served notice of this Petition within three months of the issuance of the Corrected Final Award, issued on August 23, 2019, as required by FAA § 12.[3]

This Court has personal jurisdiction over the GPs because, *inter alia*: (*a*) each is headquartered in California (Ex. 5 ¶ 33, Ex. 1 ¶ 2); (*b*) they commenced in California the Arbitration that is the subject of this proceeding (Ex. 1 ¶¶ 27, 39); and (*c*) as the Arbitrator found, their acts giving rise to this controversy occurred mostly in California (Ex. 1 ¶¶ 253, 255-57, 261).[4]

## III.   STANDARD OF REVIEW

The New York Convention permits an award to be "set aside . . . by a competent authority of the country in which, or under the law of which, that award was made." N.Y. CONV., Art. V.1(e). For arbitral awards made in the United States, such as this one, the applicable "domestic law" under which the award is made is the FAA. *See Aspic I*, 268 F. Supp. 3d at 1057 (cross-motions to confirm or vacate arbitral award rendered in California were subject to FAA).

Under Section 10 of the FAA, vacatur of an arbitration award is warranted either where "the arbitrators exceeded their powers" or where "the arbitrators were guilty of . . . misbehavior by which the rights of any party have been prejudiced." FAA § 10(a)(3), (4). Similarly, the New York Convention's grounds for denying enforcement include:

---

[3] The parties also entered into a "standstill agreement" tolling CFLD's/GIIL's time to file this Petition. Because the Petition is timely under the original, untolled deadline, CFLD/GIIL do not rely upon the standstill agreement to establish timeliness, but reserves the right to do so if any questions are raised regarding timeliness.

[4] Personal jurisdiction is determined by California's long-arm statute, CAL. CIV. PROC. CODE § 410.10, which confers jurisdiction coextensive with the boundaries of due process. *Glencore*, 284 F.3d at 1123. The GPs' contacts with California easily satisfy the requirements of due process.

> The party against whom the award is invoked was . . . unable to present his case; or
>
> The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration[.]

N.Y. CONV., Art. V.1(b) & (c).[5]

Although judicial review of arbitration awards is "highly deferential," *Aspic II*, 913 F.3d at 1166, courts may not simply "rubber stamp" an arbitrator's decision. *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 407 (9th Cir. 2011). Where an arbitrator disregards the parties' contracts, intentions and expectations simply to reach a result that he believes is just, courts "***must*** intervene." *Aspic II*, at 1169 (emphasis added). As the U.S. Supreme Court has explained:

> It is only when an arbitrator strays from interpretation and application of the agreement ***and effectively dispenses his own brand of industrial justice*** that his decision may be unenforceable. In that situation, an arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator exceeded his powers, for ***the task of an arbitrator is to interpret and enforce a contract, not to make public policy***.

*Stolt-Nielsen*, 559 U.S. at 671–72 (emphasis added) (citations omitted). "[A]rbitrators exceed their powers [under Section 10(a)(4) of the FAA] when the award is completely irrational or exhibits a manifest disregard of the law." *Aspic II*, at 1169 (citations and quotation marks omitted). "An award is completely irrational only where the arbitration decision fails to draw its essence from the agreement." *Id*. (same). "An arbitration award "draws its essence from the agreement" if the award is derived from the agreement, viewed "in light of the agreement's language and context, as well as other indications of the parties' intentions." *Id*. (same); *Stolt-Nielsen*, at 664 ("The parties' intentions control").

Arbitrators also exceed their powers by rendering decisions "which clearly go[] beyond the issues submitted by the parties." *Delta Lines, Inc. v. Bhd. of Teamsters & Auto Truck Drivers,*

---

[5] On a motion to vacate an award subject to the Convention rendered in the United States, "the court considers . . . arguments for vacating the award under both the New York Convention and the domestic standards for review under the FAA." *Immersion Corp. v. Sony Computer Entm't Am. LLC*, No. 16-CV-00857-RMW, 2016 WL 2914415, at *3 (N.D. Cal. May 19, 2016). In such circumstances, "there is no conflict between the Convention and the domestic FAA." *Dastime Gp. Ltd. v. Moonvale Investments Ltd.*, Case No. 17-cv-01859-JSW, 2017 WL 4712179, at *3 n.2 (N.D. Cal. Oct. 11, 2017).

*Local 85*, 409 F. Supp. 873, 875 (N.D. Cal. 1976) (vacating award that resolved issues not argued by the parties). At the same time, an arbitrator's decision on dispositive matters not submitted by the parties fails to satisfy the requirement of "fundamental fairness" under Section 10(a)(3) of the FAA—"that is, ***adequate notice*** and an ***opportunity to be heard*** on the evidence." *Move, Inc. v. Citigroup Glob. Mkts., Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016) (emphasis added).

## IV. STATEMENT OF THE CASE

### A. The Operative Agreements

CFLD is a Chinese real estate development company headquartered in Beijing. Ex. 1 ¶ 55(66). CFLD develops and operates "industrial parks," which are focused on the manufacture and sale of high-tech products. *Id.* ¶ 55(65). Its corporate strategy depends on attracting emerging innovative technologies to its parks. Ex. 25 ¶ 7. In about 2014, CFLD began to explore foreign VC investments as a means to obtain access to startup high-tech companies that would relocate to CFLD's industrial parks. *Id.* CFLD was not interested in VC for capital growth. *Id.* ¶ 18. CFLD had no prior experience in U.S. capital markets or as a VC investor. Ex. 1 ¶ 165.

In 2013, Andrew Chung, ultimately the GPs' controlling person but then a partner at the VC firm of Khosla Ventures ("**Khosla**"), was introduced to Wenxue Wang, the chairman of CFLD's board of directors spearheading CFLD's efforts to attract foreign business to CFLD's industrial parks. Ex. 1 ¶¶ 55(63), 193; Ex. 29 ¶¶ 16-17. [REDACTED] he visited Mr. Wang in Beijing to discuss a possible business collaboration, [REDACTED] Ex. 1 ¶¶ 198, 195. CFLD agreed that its Hong Kong subsidiary, GIIL, would commit up to $200 million as the anchor investor and limited partner in two new VC funds to be managed by Chung through new companies he would create as GPs. *Id.* ¶¶ 55(66), 55(70); Ex. 3 ¶ 69. [REDACTED]

Chung engaged MoFo as the GPs' and funds' counsel, and MoFo drafted the Operative Agreements under Chung's instructions. [redacted]

- [redacted]
- [redacted]
- [redacted]
- [redacted]

CFLD did not retain any outside counsel or consultant to advise it in negotiations leading to the Operative Agreements. Ex. 1 ¶ 168. Although CFLD/GIIL negotiated a few broad business terms before the Operative Contracts were drafted, they did not make any comments or revisions on the Operative Contracts themselves, other than that the initial draft LPAs were "too long and "impossible to translate." Ex. 3 ¶ 75. [redacted]

[redacted]

---

6 [redacted]

7 [redacted]



**B.**

8



C. **The Dispute Leading To Arbitration**

[9]

- 10 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO VACATE ARBITRATION AWARD

### D. The Arbitration

1. The Parties' And Arbitrator's Agreement That Only The Operative Agreements Were At Issue

The GPs filed a Notice of Arbitration and Demand (the "**Demand**") with the American Arbitration Association ("**AAA**") for breach of contract and related claims based solely on the Operative Contracts. *See* Ex. 13.[10] GIIL (and CFLD, provisionally, subject to its jurisdictional objection) submitted their response on September 5, 2017 (the "**Answering Statement**"), asserting defenses and counterclaims for rescission of the Operative Agreements. Ex. 1 ¶¶ 67-80.[11]

The GPs and CFLD/GIIL conclusively and unequivocally agreed that their respective claims and counterclaims "refer[red]" and "relat[ed]" solely to the Operative Agreements, and that the Arbitrator's jurisdiction was conferred solely by the arbitration provisions of the Operative Agreements. The ICDR Rules require that a claimant's notice of arbitration and a respondent's counterclaims must attach "***a copy of the entire arbitration clause or agreement being invoked***," and must contain "***a reference to any contract out of or in relation to which the dispute arises***." ICDR Rules Art. 2(3)(c)-(d), Art. 3(3) (emphasis added). The GPs and CFLD/GIIL both attached only the Operative Agreements to their Demand and Answering Statement as the basis for their respective claims and counterclaims and the Arbitrator's jurisdiction. *See* Ex. 13 ¶ 34 & n.24 (citing Exs. 14, 16, 17); *id.* ¶ 124; Ex. 21 ¶ 52; Ex. 1 ¶¶ 60-64; Ex. 20 at 13-14 ¶ 22(a)-(f), 14 ¶ 23, 69 ¶ 30, 70 ¶ 35, 26 ¶ 52; Ressmeyer Decl. ¶ 4. Neither side made any "reference" to the "26 November Agreements," nor were the November 13 Drafts attached as exhibits to the GPs' Demand or CFLD/GIIL's Answering Statement or referred to as "contract[s] out of or in relation to which the dispute ar[ose]."

---

[10] Chung was also named as a claimant, and CFLD and GIIL were named as respondents. CFLD objected to the Arbitrator's jurisdiction over it, because it was not a signatory to any of the Operative Agreements. Ex. 3 ¶ 43(a). CFLD and GIIL both also objected to Chung's standing as a claimant, because he likewise was not a signatory. *Id.* ¶ 43(b). The Arbitrator ruled that he lacked jurisdiction over Chung's claims, but that he had jurisdiction over CFLD. *Id.* ¶ 204.

[11] In accordance with its rules and practices, the AAA transferred the Arbitration to its international arm, the International Centre for Dispute Resolution ("**ICDR**"). Ex. 5 ¶ 20. The Arbitrator determined that the ICDR's Rules of Arbitration ("**ICDR Rules**") governed procedures in the Arbitration. *See id.* ¶ 26.

The Arbitrator acknowledged that "[t]he relevant commercial agreements in this arbitration are [REDACTED] the Operative Agreements. Ex. 3 ¶ 16 (citing Exs. 15-19). The Arbitrator also recognized, both in the Partial Final Award and the Final Award, that his jurisdiction was based exclusively on the arbitration clauses set forth in the Operative Agreements—not the "26 November Agreements."[12] The Arbitrator quoted in full these arbitration provisions, [REDACTED]

[REDACTED]

2. [REDACTED]

[REDACTED]

[REDACTED]

[12] *See* Ex. 5 ¶ 6(a)-(d) (citing Demand, Exs. A-D (Exs. 14-17)) (incorporated by reference at Ex. 3 ¶ 17); Ex. 3 ¶¶ 7, 16; Ex. 1 ¶ 232 (referring to "[t]he Arbitration Agreements, from which the authority of the Sole Arbitrator is derived").

[13] Ex. 1 ¶ 20 (emphasis added); *id.* ¶ 19 (incorporating by reference Ex. 5); Ex. 3 ¶ 18 (quoting Exs. 16, 17); Ex. 5 ¶ 8 (quoting Demand, Exs. C-D (Exs. 16-17)).



[redacted]

3. <u>The Parties' Positions Regarding the "26 November Agreements"</u>

Because the contractual status of the "26 November Agreements" was neither in dispute nor the subject of any claim or counterclaim, neither side understood that it should present an evidentiary and legal case on that issue, and neither side did so. The issue was addressed only incompletely in passing, and only as it related to the validity of the Operative Agreements. ***Both sides agreed that the "26 November Agreements" were not final or binding contracts***. *See* Ex. 1 ¶¶ 67-85.

The GPs' adamant position was that the "26 November Agreements" were ***never*** intended to be final and that they remained draft, nonbinding documents until [redacted] Chung signed the LPAs on December 18, 2015. The GPs specifically ***rejected*** the theory (which the Arbitrator adopted nevertheless) that the "26 November Agreements" were initially viewed by all parties as final, valid contracts, [redacted]



[15]

4. The Parties' Agreement That The Final Award Should Terminate The Operative Agreements Immediately

Immediately following the final hearing, the GPs expressly waived their claims for specific performance, declaratory and injunctive relief in lieu of a single claim for actual damages

[14]

[15] Ex. 35 ¶¶ 237-40.

[redacted]. Indeed, the GPs acknowledged [redacted] that the Operative Agreements must be terminated, [redacted] CFLD/GIIL continued to maintain their claim for rescission of the Operative Contracts. Thus, by the time of the Final Award, no party sought a declaration of contractual validity; to the contrary, both sides had affirmatively disclaimed any such relief. *Id.* ¶¶ 475-76.

**E. The Final Award**

The Arbitrator's Final Award made the following findings, in relevant part:

1. Operative Agreements Invalidated [redacted]

[redacted]

2. The Arbitrator Imposes His Own Sense Of Equity

The Arbitrator, however, decided that that it would be "inequitable" to grant the remedy of rescission,

To impose his sense of equity, the Arbitrator found—contrary to both sides' positions—that the "26 November Agreements" were valid, enforceable contracts.

16



•

•

•

Perhaps recognizing that these findings were inconsistent with Chung's and fund counsel's testimony that the November 13 Drafts were indeed ***only*** drafts—never intended to be final, binding contracts—the Arbitrator then made a finding flatly contradicting both sides' positions:

The Final Award makes no attempt to reconcile its own finding that a vital condition to the effectiveness of the "26 November Agreements" was never met. The Arbitrator stated three times that, under the parties' purported "26 November Agreements," the GPs were required to execute the ***November 13 LPAs*** as a condition for them to be binding.

[17]

The GPs, of course, never signed the November 13 LPAs; they signed only the final LPAs [REDACTED] The Arbitrator never explained, and the parties were never asked to address, how the "26 November Agreements" could be valid if, as the Arbitrator found, their effectiveness was contingent upon the GPs' signature on the November 13 LPAs.

[REDACTED]

3. Awards of Only Nominal Damages, But $9 Million in Costs

The Arbitrator found that, [REDACTED] CFLD/GIIL suffered no damages from the GPs' breaches of fiduciary duty [REDACTED] He therefore awarded CFLD/GIIL nominal damages of $100 for such breaches. *Id.* ¶ 393.

Having created his own contracts from unsigned, incomplete drafts, the Arbitrator found that CFLD/GIIL had breached [REDACTED] as well as the implied covenant of good faith and fair dealing. *Id.* ¶¶ 396, 398, 421. However, he found that CFLD/GIIL's breaches had caused the GPs no damages. *Id.* ¶¶ 466, 473. He accordingly awarded the GPs nominal damages of $100 for each breach, for a total of $200. *Id.* ¶¶ 466, 473.

Astoundingly, despite ruling for CFLD/GIIL on its actual claim (invalidity of the Operative Agreements), denying the GPs' only claim (monetary damages [REDACTED], and awarding declaratory relief adamantly opposed by both sides, the Arbitrator determined that the GPs were the "prevailing parties" and issued an award of attorneys' fees and costs in their favor in the amount of ***about $9 million***. *Id.* ¶¶ 487-91. Although

18 [REDACTED]

acknowledging that the GPs' fees and costs were thirty percent (30%) more than CFLD/GIILs', the Arbitrator engaged in no reasoned analysis of their reasonableness. *Id.* ¶¶ 488-89.

**F. <u>Post-Award Proceedings</u>**

Following the Final Award, both sides submitted motions to interpret or clarify the Award, pursuant to ICDR Art. 33. Ex. 36 ¶¶ 17, 21. These motions only confirmed that the Final Award was outside the scope of the parties' submissions and the Operative Agreements. The GPs sought "clarification" regarding [redacted] in the November 13 Appendix 1—their deletion of which in the Operative Agreements the Arbitrator found was "ineffective" and not part of the parties' agreement. *Id.* ¶ 29; Ex. 1 ¶¶ 56(d), 123, 163.[19] [redacted]

[redacted]

The Arbitrator denied the GPs' request [redacted][20]

## V. ARGUMENT

The Court should vacate the Final Award under the FAA § 10(a)(4) because the Arbitrator "exceeded [his] powers," and under FAA § 10(a)(3) because the arbitrator engaged in "misbehavior" that deprived CFLD/GIIL of their rights to a fundamentally fair hearing. It should

[19] *See also* Section IV(E)(1), *supra.*

[20] The Arbitrator agreed to make typographical corrections to the Final Award to which both sides had agreed. Ex. 2 ¶ 1(a)-(e).

likewise vacate under the New York Convention, because CFLD/GIIL were "unable to present [their] case" on the dispositive question of the validity of the 26 November Agreements and because such question was "beyond the scope of the submission to arbitration[.]" N.Y. CONV., ART. V.1(b), (c).

### A. The Final Award Should Be Vacated Because The Arbitrator Exceeded His Authority

#### 1. The Final Award Did Not "Draw Its Essence" From The Parties' Contracts

The Arbitrator exceeded his powers by crafting and enforcing his own contracts in derogation of the parties' submissions limiting his authority to deciding the enforcement and validity of the Operative Agreements, in order to "dispense[] his own brand of industrial justice." *See Stolt-Nielsen*, 559 U.S. at 671–72. The Final Award manifestly "fails to draw its essence" from the Operative Agreements or the parties' submissions. *See Aspic II*, 913 F.3d at 1166.

[redacted][21] Such restrictions on an arbitrator's authority are routinely enforced. *See, e.g.*, *Federated Employers of Nevada, Inc. v. Teamsters Local No. 631*, 600 F.2d 1263 (9th Cir. 1979) (arbitration agreement requiring the arbitration to choose between the sides' competing offers "with no modification or compromise in any fashion" precluded the arbitrator from deviating from the interest provision of the offer he chose).[22] Accordingly, the Arbitrator rejected the GPs' suggestion that the Arbitrator "reform" or "sever" the Operative Contracts [redacted]

---

[21] CFLD/GIIL's written submissions also directed the arbitrator to this limitation on his jurisdiction. *See* Ex. 32 ¶ 388; Ex. 33 ¶¶ 237-41.

[22] *See also Hebbronville Lone Star Rentals, L.L.C. v. Sunbelt Rentals Indus. Servs., L.L.C.*, 898 F.3d 629 (5th Cir. 2018) (affirming vacatur of award of reformation where arbitration clause in agreement did not give arbitrator authority to reform the agreement).

But the Arbitrator's alternative solution in an effort to reach the same result was even further outside his powers. A decision can scarcely fail more dramatically to "draw its essence" from the parties' agreement than by discarding their agreement altogether and substituting entirely different contracts of the Arbitrator's own making. *See Dobbs, Inc. v. Local No. 614 Int'l Broth. Of Teamsters*, 813 F.2d 85, 88 (6th Cir. 1987) (affirming vacatur where "the arbitrator was creating a contract of his own, rather than applying the contract agreed to by the parties"); *Stolt-Nielson*, 559 U.S. at 682 (affirming vacatur of award that imposed arbitration "despite the parties' stipulation that they had reached 'no agreement' on that issue").

Moreover, the Arbitrator disregarded the ICDR Rules requiring the parties to identify specifically in their initial pleadings the "arbitration clause or agreement being invoked" and to "reference . . . any contract out of or in relation to which the dispute arises."[23] The self-evident purpose of those Rules is to ensure that any contracts at issue are expressly identified at the outset of the proceeding—a purpose obviously defeated if the arbitrator is permitted to raise *sua sponte* and resolve claims based on different contracts. As the Arbitrator found, the ICDR Rules were incorporated into the parties' arbitration agreements, and they, no less than the agreements themselves, restrict the scope of the Arbitrator's powers. *See, e.g.*, *Axia Netmedia Corp. v. KCST, USA, Inc.*, 381 F. Supp. 3d 128, 138 (D. Mass. 2019) (arbitrator exceeded his powers in light of AAA rule requiring that arbitral awards remain "within the scope of the agreement of the parties" where the arbitrator revised the contracts submitted to him for decision).

In *Aspic*, this Court, and the Ninth Circuit on appeal, vacated an arbitral award in which the arbitrator "voided and reconstructed parts of the [operative contracts] based on a belief that the [contracts] did not reflect a true meeting of the minds." *Aspic I*, 268 F. Supp. 3d at 1059. The arbitrator found, based on "normal business practices and customs," that the parties could not have expected "strict[] conform[ance]" to these provisions. *Aspic II*, 913 F.3d at 1168. The Ninth Circuit held that the award "disregarded specific provisions of the plain text in an effort to prevent what

[23] *See* ICDR Rule 2(3)(c)-(d), Rule 3(3).

the Arbitrator deemed an unfair result. Such an award is 'irrational." *Id*. at 1167-68. The Court concluded:

> We have become an arbitration nation. An increasing number of private disputes are resolved not by courts, but by arbitrators. Although courts play a limited role in reviewing arbitral awards, our duty remains an important one. ***When an arbitrator disregards the plain text of a contract without legal justification simply to reach a result that he believes is just, we must intervene***.

*Id.* at 1169 (emphasis added).

The Arbitrator's error in this case was, if anything, worse than that in *Aspic*. Here, the Arbitrator found that there ***was*** a meeting of the minds on the "26 November Agreements" with terms materially different than the Operative Agreements, even though both sides insisted (as the Arbitrator expressly recognized) that there was not.[24] As in *Aspic*, the Arbitrator's "disregard of the plain text" of the Operative Agreements—the undisputed source of his jurisdiction—in order to enforce materially different contracts was made "without legal justification simply to reach a result that he believe[d] was just." *See Aspic II*, 913 F.3d at 1169.[25]

2. <u>The Final Award Was Outside the Scope of the Parties' Submissions</u>

The Arbitrator also exceeded his powers by resolving a dispositive issue outside the parties' submissions and awarding relief that not only was unrequested, but adamantly opposed, by the parties. *See Delta Lines*, 409 F. Supp. at 875 (vacating award that resolved issues not argued by the parties); *Coast Trading Co., Inc. v. Pacific Molasses Co.*, 681 F.2d 1195, 1197 (9th Cir. 1982) (affirming vacatur of award that went "beyond the scope of the parties' submission"); *Aspic I*, 268 F. Supp. 3d at 1059-60 ("Notably neither party presented this argument to the Arbitrator"); *Aspic II*, 913 F.3d at 1168 ("Our conclusion is further supported by the fact that neither party argued [the ground for the arbitrator's decision] in their arbitration briefs").

Here, too, neither the GPs nor CFLD/GIIL ever argued that there was mutual assent to the terms of the "26 November Agreements" or that they were valid contracts. Both sides argued

---

[24] Ex. 1 ¶¶ 114, 99, 115, 92, 103.

[25] *See also W. Employers Ins. Co. v. Jefferies & Co.*, 958 F.2d 258, 261–62 (9th Cir. 1992) (reversing district court's confirmation of arbitration award given the absence of "indic[ation] why, under simple principles of contract law, [a party] should be held to the terms of a contract for which it did not bargain").

exactly the opposite. *See Am. Postal Workers Union v. United States Postal Serv*., 682 F.2d 1280, 1283-86 (9th Cir. 1982) (vacating arbitration award where arbitrators found that an employee had not participated in a strike, even though the employee had conceded his participation in the strike for two hours). The Arbitrator was not free to raise and dispose of a fundamental, outcome-determinative issue that neither party raised.

**B. The Final Award Should Be Vacated <u>Because CFLD/GIIL Did Not Receive A Fair Hearing</u>**

The Final Award's dispositive findings on issues never raised deprived CFLD/GIIL of their right to a fundamentally fair hearing, as required by 9 U.S.C. § 10(a)(3) and N.Y. CONV., Art. V.1(b). *See Move, Inc*., 840 F.3d at 1158 (9th Cir. 2016) ("fundamental fairness" requires "adequate notice and an opportunity to be heard on the evidence."); *Matter of Watkins-Johnson Co. v. Pub. Utilities Auditors*, No. C-95 20715 RMW(E.I.), 1996 WL 83883, at *4 (N.D. Cal. Feb. 20, 1996) (vacating award under predecessor to FAA § 10(a)(3) because the arbitration "ha[d] not provided an adequate opportunity for the party to present its evidence and arguments.").

Prior to the issuance of the Final Award, there was no indication that the validity of the "26 November Agreements" was at issue. CFLD/GIIL were severely prejudiced by the absence of any opportunity to present evidence and arguments that the "26 November Agreements" were not valid contracts or, if they were, the GPs had materially breached them, entitling CFLD/GIIL to terminate them. Had CFLD/GIIL been given the opportunity, they could have made the following arguments:

- The "26 November Agreements" were invalid based on the GPs' evidence that they viewed the drafts as non-final and non-binding.[26]
- Execution of the 13 November LPAs was a condition precedent to the validity of the "26 November Agreements." *See* Section IV(E)(2) & n.18 *supra*. The GPs never executed the 13 November LPAs (*see id.*), and thus no contract was formed.[27]

---

[26] *See Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1212 (9th Cir. 2016) (invalidating written, executed agreement that appeared valid on its face, because mutual assent is lacking "where all parties to what would otherwise be a bargain manifest an intention that the transaction is not to be taken seriously").

[27] *See Recreation Ctrs. of Am., Inc. v. Sheppard*, No. CIV. A. 4041, 1974 WL 6345, at *5 (Del. Ch. Oct. 21, 1974) ("Where it is clearly understood that the terms of a proposed contract, though tentatively agreed on, shall be reduced to writing and signed before it shall be considered as complete and binding on the parties, there is no final contract until that is done."); *Leeds v. First Allied Connecticut Corp*., 521 A.2d 1095, 1102 (Del. Ch. 1986) ("[I]t is when ***all*** of the terms that

- If the "26 November Agreements" were valid, CFLD/GIIL was entitled to terminate them for material breach, [redacted]
  - ➢ [redacted]
  - ➢ [redacted].[28]

Because CFLD/GIIL were deprived of a fundamentally fair hearing, the Final Award must be vacated.

**C. Vacatur of The Award Automatically Vacates Its Award of Costs**

If the substantive determinations of the Final Award are vacated, its award of costs to the GPs as the "prevailing parties" must be vacated as well. *See Thomas Kinkade Co. v. Hazlewood*, No. C 06 7034 MHP, 2007 WL 2088584, at *17 (N.D. Cal. July 18, 2007) (where award of fees and costs was premised on finding that defendants were the prevailing party, "[b]ecause this court has vacated that determination, the factual predicate for the award of attorneys' fees has evaporated, and the award of fees and costs must likewise be vacated"); *accord Aspic I*, 268 F. Supp. 3d at 1060 (dispute over fee award was "moot" in light of vacatur).

## VI. CONCLUSION

For the foregoing reasons, the Final Award should be vacated.

Dated: October 28, 2019

Respectfully submitted,

OBERDIER RESSMEYMER LLP
Carl W. Oberdier
(*pro hac vice admission pending*)
Kellen G. Ressmeyer
(*pro hac vice admission pending*)
655 Third Avenue; 28th Floor
New York, New York 10017
Telephone: (212) 659-5141

By:

*/s/ Stuart C. Plunkett*
STUART PLUNKETT (SBN 187971)
Stuart.plunkett@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (415) 291-6200

---

the parties themselves regard as important have been negotiated that a contract is formed . . . ***Agreements made along the way*** to a completed negotiation, even when reduced to writing, ***must necessarily be treated as provisional and tentative***. Negotiation of complex, multi-faceted commercial transactions could hardly proceed in any other way.") (emphasis added).

[28] *See Sapirstein-Stone-Weiss Found v. Merkin*, 950 F. Supp. 2d 621, 621 (S.D.N.Y. 2013) (fund manager's inaccurate disclosures regarding investment strategy were fraudulent).

YAN ZHANG (SBN 248531)
Yan.zhang@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: 650.739.7500

*Attorneys for Plaintiffs*
*China Fortune Land Development and Global Industrial Investment Ltd*