UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHINA FORTUNE LAND DEVELOPMENT, et al., <br> Plaintiffs, <br> v. <br> 1955 CAPITAL FUND I GP LLC, et al., <br> Defendants. | Case No. 19-cv-07043-VC <br><br> **ORDER DENYING PETITION TO VACATE ARBITRATION AWARD** <br><br> Re: Dkt. No. 1 |

The arbitrator was asked to resolve a highly complex contractual dispute involving multiple contested versions of various agreements, an intricate and hotly disputed factual record, and plentiful evidence of misconduct by both sides. After thousands of pages of briefing and evidence, and days of testimony and argument, the arbitrator issued a 147-page award that addressed dozens of interrelated arguments from both parties, and by all appearances attempted to resolve the dispute through careful fact-finding and reliance on applicable law.

The petitioners contend that the arbitrator exceeded his authority and committed misconduct by basing the award in part on the unsigned versions of the limited partnership agreements from November 2015. *See* 9 U.S.C. § 10(a)(3)-(4). They argue that neither party asked the arbitrator to conclude that these November versions were the operative contracts, and therefore that the petitioners never had notice of this contract theory or an opportunity to contest

it. But this argument fails.

The parties asked the arbitrator to resolve a dispute that the parties described as arising out of, among other contracts, the November 26 subscription agreements and the December versions of limited partnership agreements that were signed by the respondents on the petitioners' behalf. The parties disputed when, if at all, these contracts were validly assented to. The arbitrator determined that the limited partnership agreements were binding, though there is admittedly some ambiguity in his contract formation analysis. Parts of the award suggest that the partnership agreements were made operative by the petitioners' signing of the subscription agreements in November, and that the parties mutually assented at that time to the November versions, rather than the December versions, of the partnership agreements. *See, e.g.*, Final Award ¶ 98 (Dkt. 24-8 at 39-40). Other passages in the award suggest that the partnership agreements were not made operative until the December versions were signed through a power of attorney. *See, e.g.*, ¶ 113. This ambiguity makes it difficult to assess the petitioner's arguments about which precise document provided the basis for the arbitrator's award, and counsels against disturbing his decision. *See Garvey v. Roberts*, 203 F.3d 580, 589 (9th Cir. 2000) ("[A]mbiguity in an opinion that accompanies an award, or a lack of any real opinion at all, is not sufficient to permit an inference that the arbitrator exceeded his authority."); *Bosack v. Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009) ("Under the 'completely irrational' doctrine, the question is whether the award is 'irrational' with respect to the contract, not whether the panel's findings of facts are correct or internally consistent."). And even if the arbitrator's conclusion that the limited partnership agreements were binding was wrong as a matter of Delaware contract law, it was plainly within the scope of his authority to resolve the dispute. *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) ("[T]he sole question for us is whether the arbitrator (even

arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.");
*Stolt-Nielsen, S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 671 (2010) ("It is not enough for petitioners to show that the [arbitrator] committed an error—or even a serious error."); *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 1003 (9th Cir. 2003) ("The risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law, or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes, and such legal and factual errors lie far outside the category of conduct embraced by § 10(a)(4)."). Nor do the petitioners provide any evidence to support their claim that the arbitrator's ruling was based on "his own brand of industrial justice" or improper considerations of public policy. *Cf. Stolt-Nielsen*, 559 U.S. at 671–72 (2010); *Aspic Engineering & Construction Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1168 (9th Cir. 2019).[1]

The petitioners also exaggerate the extent to which the arbitrator's ruling diverged from how the parties framed the issues, if there was any divergence at all. For example, the parties clearly presented to the arbitrator the issue of whether the signing of the subscription agreements could constitute assent to the terms of the limited partnership agreements. *See* Dkt. 24-76 at 88 ("[GIIL's] signature on the SAs also constitutes an objective manifestation of consent to the terms of the LPAs. Respondents 'received and reviewed' the LPAs before signing the SAs, and were aware that their signature on the latter would bind them to the former."); Dkt. 24-72 at 116 ("[The GPs'] reliance on GIIL's execution of the SAs and side letters on November 23, 2015, as

---

[1] The petition cites the arbitrator's use of the word "inequitable" as evidence that he exceeded his authority. But as the respondents point out (and as the petitioners appear to concede by not addressing the issue in their reply brief), this word was used in the context of rejecting the *petitioners*' request for the equitable remedy of rescission. *See* Final Award ¶ 391.

satisfying the requisite 'objective manifestation of assent' to terms in future LPAs that were then-unknown to both parties, and never disclosed to [GIIL] prior to closing, is simply untenable."); *see also* Dkt. 24-74 at 153 ("Even if [GIIL] could establish there was no mutual assent to the changes to the LPAs made during their finalization (which is strongly disputed), this would affect only the validity of the changes themselves—not the validity of the LPAs as a whole."). The petitioners place considerable emphasis on the fact that the parties submitted the signed December versions of the limited partnership agreements (but not the unsigned November versions) to the arbitrator as one of the bases for arbitration in their Demand for Arbitration. But as already discussed, the legal relationship among all these documents was included in the disputed issues the arbitrator was asked to decide. So the version of the contract attached to the arbitration demand is not decisive. *See also Schoenduve Corp. v. Lucent Technologies, Inc.*, 442 F.3d 727, 733 (9th Cir. 2006) ("The scope of the arbitrator's jurisdiction extends to issues not only explicitly raised by the parties, but all issues implicit within the submission agreement."); *id.* ("[T]he arbitrator' interpretation of the scope of his powers is entitled to the same level of deference as his determination on the merits.").

The petitioners' protestations about fairness amount to a complaint that had they known how the arbitrator would rule, they would have made different arguments. This is a familiar frustration for litigants, but it doesn't justify disturbing an arbitrator's award, nor does it violate due process. *See* 9 U.S.C. § 10(a)(3); *U.S. Life Insurance Co. v. Superior National Insurance Co.*, 591 F.3d 1167, 1177 (9th Cir. 2010) ("[P]erhaps [the petitioner] did not enjoy a perfect hearing; but it did receive a fair hearing. It had notice, it had the opportunity to be heard and to present relevant and material evidence, and the decisionmakers were not infected with bias."); *Schoenduve Corp.*, 442 F.3d at 734.

The petition to vacate the arbitration award is denied, and the cross-petition to confirm the award is granted. *See* 9 U.S.C. §§ 201, 207.

**IT IS SO ORDERED.**

Dated: January 31, 2020

VINCE CHHABRIA
United States District Judge